COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

TEXAS DEPARTMENT OF PUBLIC                  )

SAFETY,                                                              )              
No.  08-04-00181-CV

                                                                              )

Appellant,                          )                    Appeal from the

                                                                              )

v.                                                                           )           
County Court At Law #3

                                                                              )

JOSEPH DEAN VASQUEZ,                                )          
of El Paso County, Texas

                                                                              )

Appellee.                           )                     (TC# 2004-C0007)

                                                                              )

 

 

O
P I N I O N

 

The Texas
Department of Public Safety (ADPS@) appeals the county court at law=s reversal of an administrative
decision, entered after a contested case hearing, authorizing the suspension of
Appellee Joseph Dean Vasquez=s
driver=s
license.  In two issues, the DPS argues
that the trial court erred in reversing the ALJ=s
administrative decision because:  (1) it
substituted its judgment for that of the ALJ in determining witness credibility
and (2) the administrative decision was supported by substantial evidence   We reverse and render judgment affirming the
administrative law judge=s
decision.

 








On the evening of
August 30, 2003, El Paso Police Officer Paul Portillo was patrolling on
Interstate-10 eastbound when he noticed a vehicle swerving from left to right
in the right traffic lane during heavy traffic. 
Officer Portillo also observed the vehicle straddle and cross over the
marked traffic lanes at least three times. 
Based on these observations, Officer Portillo decided to start a DWI
investigation.  Officer Portillo turned
on his emergency lights and then activated his siren after he had been following
the vehicle for half a mile.  The vehicle
pulled over on the side of the freeway and stopped in the emergency lane.  Officer Portillo approached the driver=s side of the vehicle, a Cadillac
Escalade SUV.  He observed that there
were three occupants in the vehicle.  The
driver, Mr. Vasquez, rolled down the window. 
Officer Portillo asked Mr. Vasquez for his driver=s
license and insurance.   According to the
officer, Mr. Vasquez fumbled through his wallet while trying to locate his
driver=s license
and did not have proof of insurance. 
Officer Portillo smelled an odor of alcohol coming from Mr. Vasquez=s person and breath.  He also observed that Mr. Vasquez had
bloodshot eyes and slurred speech.








Officer Portillo
asked Mr. Vasquez to step out the vehicle. 
Officer Portillo noted that upon exiting, Mr. Vasquez showed apparent
disregard for the cell phone that was on the driver=s
seat between his legs.  The officer
recalled that he had to draw Mr. Vasquez=s
attention to the cell phone in order to prevent it from falling onto the
ground.  Mr. Vasquez was escorted to the
rear of the vehicle and asked to perform three field sobriety tests, which
according to Officer Portillo, he failed. 
Mr. Vasquez was placed under arrest and his vehicle was turned over to
his brother and friend, the other passengers in the vehicle.  The statutory warnings in document DIC-24
were given to Mr. Vasquez.  Mr. Vasquez
agreed to give a breath specimen for testing, but after transport to the police
station he refused to give a breath specimen, resulting in the 180-day
suspension of his driver=s
license.  See Tex.Transp.Code Ann. ' 724.035(a)(Vernon Supp. 2004-05).

At the contested
administrative hearing, Mr. Vasquez testified that in the initial stop Officer
Portillo had approached the driver=s
side of his vehicle, reached inside the truck, turned off the ignition, and
took his keys.  Mr. Vasquez recalled that
he was still sitting in the driver=s
seat when the officer took possession of his keys.  Officer Portillo, however, offered
conflicting testimony.  According to
Officer Portillo, he did not reach into the vehicle at any time during the
initial contact.  Rather, he believed
that it would have been dangerous to do so, and further, stated that he had no
reason to reach into the vehicle.  On
cross-examination and redirect, Officer Portillo maintained that he did not
reach into the vehicle to take the keys out of the ignition while Mr. Vasquez
was still sitting in the driver=s
seat.  Officer Portillo conceded that it
was possible that after asking Mr. Vasquez to step out of the vehicle, he could
have taken the keys out of the ignition for officer safety, however, he did not
recall having done so in this case.

The other
passengers in the vehicle offered testimony regarding the removal of
Mr. Vasquez=s
keys.  James Vasquez recalled that
Officer Portillo asked his brother to step out of the vehicle and after his
brother complied with that request, the officer reached into the vehicle and
took the keys.  Officer Portillo then
told him and the other occupant, Mark Artalejo, to stay in the vehicle and not
to leave it.  James Vasquez then saw his
brother being escorted to the back of the vehicle.  Thirty minutes later, the officer informed
him that his brother was going to be arrested and gave them custody of the
vehicle.  Mark Artalejo could not recall
if anyone took the keys out of the ignition, but remembered that the officer
gave him the keys later on that evening when he was given custody of the
vehicle.








In its findings of
fact, the administrative law judge (ALJ) found that:

(1)        On August 30, 2003, reasonable suspicion
to stop [Vasquez] or probable cause to arrest [Vasquez] existed.  Texas Officer P. Portillo=s testimony indicates that he observed
[Vasquez=s]
vehicle traveling East on Interstate-10 before the Lee Trevino exist, swerving
within its own right lane, and observed said vehicle straddle into the other
traffic lane, and into the right emergency lane, three times.  He turned on his lights, but said vehicle
continued about one mile, until the Officer turned on his siren also.  The vehicle stopped at the America=s Avenue.  The Officer then proceeded with a traffic
stop and approached the vehicle.  The
incident occurred in a public highway in El Paso County, Texas.

 

(2)        On the same date, probable cause to
arrest [Vasquez] existed, in that probable cause existed to believe that
[Vasquez] was operating a motor vehicle in a public place while intoxicated,
based on the facts stated in Findings of Fact No. 1 and the findings outlined
below.   On contact with [Vasquez], the
Officer observed that [Vasquez] depicted signs of intoxication.  While speaking to [Vasquez], the Officer
detected an odor of alcohol coming from [Vasquez=s]
breath.  [Vasquez] also had slurred
speech and bloodshot eyes.  The Officer
testified that [Vasquez] fumbled through his wallet looking for requested
documentation and that his cell phone was placed between his legs and fell upon
him exiting the vehicle and dragged the cell phone, unaware that he was doing
so.  Further, [Vasquez] showed clues of
intoxication as he performed the Horizontal Gaze Nystagmus and the Standardized
Field Sobriety Tests . . . .

 

(3)        [Vasquez] promulgated the argument that
the officer exceeded his scope by reaching in and taking the keys out of the
ignition. [Vasquez] testified that he was still seated behind the wheel when
the officer reached in.  Contradictory
testimony to this issue was given by James D. Vasquez, [Vasquez=s] brother, who testified that
[Vasquez] stepped out of the vehicle, and then the officer removed the
keys.  The Officer testified that keys
are removed for security reasons.  The
second witness, Mark Artalejo, did not recall if anyone removed the keys from
the ignition but did remember that the Officer handed him the keys.  The Officer=s
testimony is collaborated [sic] by James Vasquez=s
testimony, in that he stated he did not reach into the vehicle when [Vasquez]
was seated behind the wheel, and the undersigned Administrative Law Judge finds
the Officer=s testimony
credible.

 








(3)[sic] [Vasquez] was placed under arrest and was
properly advised of the warnings required under Tex. Transp. Code Ann. ' 724.015. [Vasquez] was then asked to
submit a specimen of his breath for analysis. 
After being requested to submit a specimen of breath, [Vasquez] refused.

 

In its conclusions
of law, the ALJ determined that based on its findings of fact, DPS had proved
the issues set out in Section 724.042 and that Mr. Vasquez=s driver=s
license was subject to suspension for 180 days pursuant to Section
724.035.  Thus, the ALJ ordered that DPS
was authorized to suspend Mr. Vasquez=s
driving privileges for 180 days.  

Mr. Vasquez
appealed the administrative decision to the El Paso County Court at Law No.
3.  At the trial court hearing, Mr.
Vasquez argued that Officer Portillo exceeded the scope of his investigatory
stop by removing the keys from his vehicle either immediately or after
Mr. Vasquez exited the vehicle. 
Specifically, Mr. Vasquez argued that removing the keys before
Mr. Vasquez performed any field sobriety tests constituted an illegal
detention or arrest that went beyond the scope of a traffic stop and, in this
case, there was no issue of safety. 
Vasquez also argued that his testimony and Officer Portillo=s testimony were not inconsistent
because Officer Portillo never denied taking the keys.  Notwithstanding this argument, Mr. Vasquez
also asserted that the ALJ had erred in its determination of the credibility of
the witnesses.

The trial court
granted Mr. Vasquez=s petition
and reversed the administrative decision, finding that it was not supported by
substantial evidence.  In addition, the
trial court specifically found that:








[Vasquez] is an Officer of the Court,[1]
and under oath testified that his keys were removed by Officer Portillo
immediately upon approaching his vehicle. 
Since Officer Portillo indicated he could not recall when or if he
removed the keys from [Vasquez], the testimony is clear that at some point he
had the keys in his possession, because they were handed over to passenger Mark
Artalejo.  Although the Officer testified
that he noticed [Vasquez] to have an odor of alcohol coming from his breath,
slurred speech, bloodshot eyes, fumbled through his wallet, and the dragging of
the cell phone, this Court is specifically finding that [Vasquez] had already
been placed under arrest, without probable cause, by the time the Officer
noticed the indicators.  Since probable
cause did not exist at the time Officer Portillo >arrested= [Vasquez], this Court is finding that
those indicators should be suppressed as the fruit of an illegal arrest thus
this Court orders removal of suspension immediately.

 

DPS now appeals
the trial court=s order
reversing the administrative decision and removal of the suspension of Mr.
Vasquez=s driver=s license.

In two issues, DPS
contends that the trial court erred in reversing the ALJ=s
decision because that decision was supported by substantial evidence and,
specifically, the trial court erred in substituting its judgment for that of
the ALJ in determining the credibility of witness testimony regarding if or
when Officer Portillo took Mr. Vasquez=s
keys.  As these issues are related, we
will address them together.








Courts review
administrative license suspensions under a substantial evidence standard.  See Tex.Transp.Code
Ann. ' 524.043
(Vernon 1999); Tex.Gov=t Code Ann. '
2001.174 (Vernon 2000); see also Mireles v. Texas Dep=t of Pub. Safety, 9 S.W.3d 128, 131
(Tex. 1999).  Under this standard of
review for administrative decisions in contested cases, the court shall reverse
or remand the case for further proceedings if the appellant=s substantial rights have been
prejudiced because of the administrative findings, inferences, conclusions, or
decision are:  (A) in violation of a
constitutional or statutory provision; (B) in excess of the agency=s statutory authority; (C) made through
unlawful procedure; (D) affected by other error of law; (E) not reasonably
supported by substantial evidence considering the reliable and probative
evidence in the record as a whole; or (F) arbitrary or capricious or
characterized by abuse of discretion or clearly unwarranted exercise of
discretion.  Tex.Gov=t Code Ann. '
2001.174(2); see also Tex. Dep=t
of Pub. Safety v. Cantu, 944 S.W.2d 493, 495 (Tex.App.--Houston [14th
Dist.] 1997, no writ)(A[T]o
reverse an agency decision, the reviewing court must conclude (1) that the
agency=s
decision was erroneous for one of the reasons enumerated in subsections (A)
through (F), and (2) that substantial rights of the appellant have thereby been
prejudiced.@).  

The issue for the
reviewing court is not whether the agency=s
decision is correct, but only whether the record demonstrates some reasonable
basis for the agency=s
action.  Mireles, 9 S.W.3d at
131.  The court may not substitute its
judgment for that of the agency.  Id.;
see also Tex.Gov=t Code Ann. '
2001.174.  The findings and conclusions
of the agency are presumed to be valid.  Tex.
Dep=t of Pub.
Safety v. Stacy, 954 S.W.2d 80, 83 (Tex.App.--San Antonio 1997, no
writ).  In contested cases, the reviewing
court must affirm the administrative findings if there is more than a scintilla
of evidence to support them.  Mireles,
9 S.W.3d at 131; See also R. R. Comm=n
of Texas v. Torch Operating Co., 912 S.W.2d 790, 792-93 (Tex.
1995)(substantial evidence requires only more than a mere scintilla of
evidence).  The burden for overturning an
agency ruling is formidable.  Tex. Dep=t of Pub. Safety v. Pucek, 22
S.W.3d 63, 67 (Tex.App.--Corpus Christi 2000, no pet.).  In fact, an administrative decision may be
sustained even if the evidence preponderates against it.  Mireles, 9 S.W.3d at 131.  The appellate court reviews the trial court=s determination de novo.  Tex Dep=t
Pub. Safety v. Cuellar, 58 S.W.3d 781, 783 (Tex.App.--San Antonio 2001, no
pet.); Raesner v. Tex. Dep=t
of Pub. Safety, 982 S.W.2d 131, 132 (Tex.App.--Houston [1st Dist.] 1998,
pet. denied).








DPS argues here
that the trial court erred in concluding that the ALJ=s
upholding of the license suspension was not supported by substantial evidence
and, in particular, asserts that the trial court substituted its judgment for
that of the ALJ in reaching its conclusion that Mr. Vasquez was arrested
without probable cause.

At the license
suspension hearing, DPS was required to prove by a preponderance of the
evidence that:  (1) reasonable suspicion
or probable cause existed to stop or arrest Mr. Vasquez; (2) probable cause
existed to believe that Mr. Vasquez was operating a motor vehicle in a public
place while intoxicated; (3) Mr. Vasquez was placed under arrest by the officer
and was requested to submit to the taking of a specimen; and (4) Mr. Vasquez
refused to submit to the taking of a specimen on request of the officer.  See Tex.Transp.Code
Ann. ''
724.042- .043 (Vernon Supp. 2004-05); Texas Dep=t of Pub. Safety v. Norrell, 968
S.W.2d 16, 18 (Tex.App.--Corpus Christi 1998, no pet.).

In this case, the
ALJ found that there was a reasonable suspicion to stop Mr. Vasquez based on
Officer Portillo=s
testimony regarding his initial observations of Mr. Vasquez=s vehicle swerving within its lane and
straddling other traffic lanes at least three times.  A police officer may stop and briefly detain
a person for investigative purposes if the officer has a reasonable suspicion,
supported by articulable facts that taken together with rational inferences
from those facts, lead him to conclude that the person detained actually is,
has been, or soon will be engaged in criminal activity.  Woods v. State, 956 S.W.2d 33, 38
(Tex.Crim.App. 1997).  Whether reasonable
suspicion exists is determined from the totality of the circumstances in the
particular case.  Id.








At the hearing,
Officer Portillo testified that he had been employed with the El Paso Police
Department for fifteen years and on the night of the incident, he was on
Interstate-10 while on assignment with the DWI unit.  That night, Mr. Vasquez=s vehicle caught the officer=s attention because it was swerving
left and right and straddling other traffic lanes at least three times in heavy
traffic.  Based on these observations,
Officer Portillo decided to conduct an investigatory stop for driving while
intoxicated.  An officer may be justified
in stopping a driver based upon a reasonable suspicion of driving while
intoxicated.  James v. State, 102
S.W.3d 162, 172 (Tex.App.--Fort Worth 2003, no pet.).  The administrative record contains sufficient
facts and demonstrates a reasonable basis for the ALJ=s
finding that Officer Portillo had reasonable suspicion to stop Mr. Vasquez to
investigate him for driving while intoxicated.

In this case, the
ALJ made an affirmative finding that probable cause to arrest Mr. Vasquez
existed, in that probable cause existed to believe that Mr. Vasquez was operating
a motor vehicle in a public place while intoxicated.  The finding was based on the facts regarding
the manner of driving that led to the stop, Officer Portillo=s observations during the initial
contact with Mr. Vasquez, and signs of intoxication as indicated by Mr. Vasquez=s performance of field sobriety tests.

Probable cause
exists where the police have reasonably trustworthy information sufficient to
warrant a reasonable person to believe a particular person has committed or is
committing an offense.  See Guzman v
State, 955 S.W.2d 85, 87 (Tex.Crim.App. 1997).  Probable cause requires more than mere
suspicion but far less evidence than that needed to support a conviction or even
that needed to support a finding by a preponderance of the evidence.  Id.








Here, Officer
Portillo stated that the stop occurred on Interstate-10 and in his initial
contact with the driver, Mr. Vasquez, he noticed an odor of alcohol on Mr. Vasquez=s person and breath.  He also observed that Mr. Vasquez had
bloodshot eyes and slurred speech.  Mr.
Vasquez fumbled through his wallet while locating his driver=s license and appeared unaware of his
actions with regard to a personal belonging while exiting his vehicle.  In addition, Officer Portillo testified that
Mr. Vasquez failed the field sobriety tests he was asked to perform and was
then placed under arrest.  Mr. Vasquez
testified that the officer took possession of his keys immediately upon
approaching his vehicle and did so while Mr. Vasquez was still sitting in the
driver=s
seat.  Officer Portillo, however, denied
having taken Mr. Vasquez=s
keys from the ignition of the vehicle at any time during the initial
contact.  Moreover, he stated he would
not have reached into the vehicle while Mr. Vasquez was still sitting in the
driver=s seat.

In reversing the
ALJ=s decision, the trial court
specifically found that Mr. Vasquez had already been placed under arrest,
without probable cause, by the time Officer Portillo noticed signs of
intoxication, namely the odor of alcohol on Mr. Vasquez=s
breath, his slurred speech, his bloodshot eyes, the fumbling through the
wallet, and the dragging of the cell phone. 
It is evident that the trial court=s
determination is premised solely upon Mr. Vasquez=s
testimony concerning the immediate removal of the keys.  The ALJ=s
findings specifically state that it found that the officer=s testimony, in which he stated he did
not reach into the vehicle when Mr. Vasquez was seated behind the wheel, to be
credible.  Thus, in order to reach the
conclusion that it did, the trial court must have substituted its judgment for
that of the ALJ with regard to the credibility of the witnesses and the weight
of the evidence.








The ALJ was the
sole judge of the credibility of the witnesses and was free to accept the
testimony of any witness or even accept Apart
of the testimony of one witness and disregard the remainder.@ 
Ford Motor Co. v. Motor Vehicle Bd. of Texas Dep=t. of Transp., 21 S.W.3d 744, 757
(Tex.App.‑-Austin 2000 pet. denied), citing Southern Union Gas
Co. v. Railroad Comm=n,
692 S.W.2d 137, 141‑42 (Tex.App.‑‑Austin 1985, writ ref'd
n.r.e.).  In this case, the ALJ decided
to accept the officer=s
testimony over Mr. Vasquez=s
version of events.  We conclude that more
than a scintilla of evidence exists to support the administrative finding that
there was probable cause to arrest Mr. Vasquez and probable cause to believe
that Mr. Vasquez was operating a motor vehicle in a public place while
intoxicated.[2]

In reviewing the
administrative record, we also find that there was substantial evidence to
support the ALJ=s
affirmative finding that Mr. Vasquez was placed under arrest by Officer
Portillo, was properly advised of the statutory warnings, was asked to submit a
breath specimen for analysis, and refused the request.  Through Officer Portillo=s testimony and documentary evidence in
the record, the evidence shows that Mr. Vasquez was arrested for driving while
intoxicated, was given the statutory warnings in document DIC-24, that he
initially agreed to give the breath specimen, but later refused to do so after
being transported to the police station.








We conclude that
there was substantial evidence to support the ALJ=s
findings on each of the elements required under Tex.Transp. Code Ann. '
724.042.  Therefore, the trial court
erred in reversing the ALJ=s
administrative decision authorizing the suspension of Mr. Vasquez=s driver=s
license.  Issues One and Two are
sustained.

We reverse the
trial court=s order
and render judgment upholding the administrative decision authorizing the
suspension of Mr. Vasquez=s
driver=s
license.

 

 

August
23, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
Mr. Vasquez is an attorney at law in El Paso County, Texas.  





[2]
Apparently, the trial court equated the removal of the keys to a formal arrest.
 In its brief, DPS asserts that the
removal of the keys of an officer does not equal to an arrest, but rather is a
safety measure during an investigative detention.  Arrests and investigative detentions are both
forms of seizure, each involving varying degrees of restraint on an individual=s liberty.  See Woods v. State, 970 S.W.2d
770, 775 (Tex.App.--Austin 1998, pet. ref=d);
Dean v. State, 938 S.W.2d 764, 768-69 (Tex.App.‑-Houston [14th
Dist.] 1997, no pet.).  Arrests
constitute the highest restriction on individual liberty and are accompanied by
circumstances that would indicate to a reasonable person that the individual
has been actually restricted or restrained. 
Dean, 938 S.W.2d at 768-69, citing Hoag v. State,
728 S.W.2d 375, 379 (Tex.Crim.App.1987). 
Even assuming that Mr. Vasquez=s
keys were immediately removed during his initial contact with Officer Portillo,
we would have concluded that he was detained for investigative purposes and had
not yet been arrested, and that under the circumstances, the officer=s action was a reasonable safety
measure given there were two passengers left in the vehicle and the location of
the investigative stop.